May it please the Court, John Glogoski v. Righetti-Glogoski for Appellant William Taylor. I'm sure this panel is very familiar with these cases that deal with removals, remands under CAFA and to the extent we want to go over specifics of the law that's fine but I appreciate that this and the dealings of CAFA. One thing, just clear the, again just understand what's common ground, the district judge in his order says that with respect to whether or not the require the substantive requirements for CAFA jurisdictions in a federal court there's no dispute that those are satisfied. The objections that you have are based upon the 30-day triggering and the successive, correct? Correct, I did not argue the amount of controversy, I argued timeliness, that is correct. Thank you. One of the things that Appellee seems to repeatedly contend was that they learned for the first time something miraculous from the class certification order that came out of the Santa Barbara Superior Court, that this was the first time that they ever could have ascertained that the amount in controversy was over five million. Well no, the question under Roth isn't whether they could have ascertained it, the question is whether what you gave them gave them that information. I mean Roth says if they can by their own independent investigation determine that it's removable, they don't have to remove until you've done something to trigger either under either the two branches. Understood, and so that is what many of the cases talk about is whether or not they have to actually do any of the calculations, if they ever have to run them the numbers, and the courts seem to be clear that they don't necessarily have to run the numbers, but what happens in a situation where they actually do run the numbers, and what is the impact of that particular inquiry on a successive removal? And I think it's important to address this issue because the way that Cox is dealing with it and the way the district court is handling it suggests that it is immaterial, that there was nothing of importance there. But if I present to any court and I say that it is A, if I later come back, I'm bound by my statement that it's A. I can't suddenly come back and say, you know what, I just learned yesterday it was A, even though three years ago I had told you that it was A. And so I think the important starting point is really to look at the remand order, because when you look at ER 29, and the importance of this is what the importance of this order is that we get a picture of what the district court was really doing at the time it was reviewing this issue for the first time, what it found, what it looked at, and what it ultimately concluded. The district court did not suggest when defendant came in and said that this case had a value of $25 million that that was preposterous, that it was based on assumptions or unreliable. What it did was said, okay, you make statements that these people work four days a week, you make statements that these people work 10 hours a day, you make statements that these people work 50 weeks a year, but you didn't bother to put a declaration in there to that effect. And if you look at ER 29 at 14, defendants also provide no evidence for the assumption that class members worked four shifts per week or 50 weeks per year. If you look at ER 30, they address the issue about 10 hours of workday. Now, why is that important? Because those are vital, vital components of the calculation. Now, are they distancing themselves from them in the second removal? No. This time they said, oh, you know what, we got to put that in a declaration. So now, when you have, and we'll compare the two declarations. If you start with ER 34, which is the Susan Irwin declaration, and that's important because she talks about what she did. This idea that you don't have to do the calculations, I understand is out there. But you are going to be bound by it when you actually do the calculations. And that's what Susan Irwin did. But the first time around, they did the calculation, but they didn't establish the truth of the underlying propositions on which the calculations were based, correct? No problem. Based on the fact that there weren't declarations saying that you had four-day work weeks, 10-hour days, and 50-hour work weeks, or 50 weeks worked in the year. If you look at ER 68, that's Hugo Henshaw's declaration. There is where he puts those things into the declaration that was lacking the first time. When they came up, for example, with $24 million in meal and rest breaks that continued to be part of the complaint, that have never left the complaint, this is how they dealt with it. They said, okay, we can estimate one violation per day of meal and rest. If you look at the district court's ruling on the first remand, the district court doesn't say that's unreasonable. In fact, if you look at their submission, and I think it's ER 249, their brief, they even cite to a case that says, the district court permitted the defendants to assume one missed rest break and one missed meal period per employee per day. That's Coleman, Estes Express Lines, CF sub 2nd, 1141 at 1149 to 50. Here's my problem with this case, and a problem that really is not so much just with this case, it's a problem with how this triggering stuff is set up. I was fairly impressed with the open about it, as when I wrote Roth, there is possibility here for gamesmanship on both sides. You don't want to be here, he doesn't want to be there. You have it in your power to say, okay, I'm going to give you 30 days to make your move. You could have made it very plain how much money was at stake, and then he would have had 30 days. You chose not to make it very plain. You chose to make it, well, he could have figured it out, and now you're trying to say, well, I gave you enough that you really were trying to do it. And he's saying, I didn't give you quite enough. I have to say I'm not very sympathetic to either side, because it's just gamesmanship on both sides. I understand. And I appreciate what you're saying, and I can't say that I necessarily disagree, given what the side's ultimate goal is in particular. Let's start from there. The question I have is whether the company represented to the district court the first time that it knew, and that the figures were what they now say they discovered. I understand that they didn't support it with affidavits, and therefore the district court properly said, well, you haven't proven that sufficiently. But did they represent, either in the papers that they submitted to the district court, or in the statements they made to the district court, did they represent that they did know? And if so, can you tell me where they made those representations, and whether there's any kind of judicial estoppel rule? Well, I don't know that you have to tell me. First, mainly I'm interested in whether they represented that they actually knew what the amount was to the district court the first time, and that the district court said, well, you may have said this, but you haven't proven it. Well, in any of the removals that I've seen, they generally use estimates, extrapolations. So if you're asking me, did they say to the penny it is this amount? No. Did they set forth the extrapolations and the calculations? And I think they did it at ER 43, which is the first of the series of calculations. And they talk about the meal period. They say based upon the field technicians. What are you reading from? ER 43 at line. But what is it? What is it, a declaration? Is it a notice of removal? The first time around. Yes. Okay. I'm sorry. Okay. First notice of removal, ER 43. Got it. Based on the field technician's approximate average hourly rate, $25, and the approximate number of shifts they work during the relevant time period, they typically work four shifts per week. The approximate potential exposure for just plaintiff's meal and rest claims is approximately 24 million in total. And then they break down the numbers. 25, that's from the declaration of Erwin, which is at ER 34. Then they have four. Four is the four days a week that they forgot to put the declaration in that they then put in ER 68 the second time around with Ingo Henshaw. So they knew that. That's something they knew. They simply just didn't put it in a declaration. The next number is 200, which is 50 weeks times four years. Again, that's another number they knew. And you'll see it in ER 69, I believe, Henshaw talking again about working 50 weeks a year. But again, the first time around, they didn't put it in a declaration. So they knew that, too. The next number is 600. 600 is the number of class members. That is from Susan Erwin's declaration, ER 34, where she says she went through the specific records. And I want to read for her because I know I'm running out of time. But then you look at times two. Times two is the violations of meal and rest breaks. And then if you go back to ER 249, it talks about the Coleman Estes case that I mentioned that says it is reasonable to assume one meal or rest break violation per payday. But if you look at Susan Erwin, and this is why I think this is really telling. I have personal knowledge of the facts, she says. I work for Cox Communication. I have access to the company's payroll systems and can generate reports. In November 2012, I reviewed company payroll records to determine the number of non-exempt employees who worked in California as field technicians or similarly titled positions. And I understand you'll be able to read this. But in paragraph three, when she's talking generally, she says there were over 600 class members. In paragraph four, she says, I also understand that some claims are only three years. And what does she do then? So I conducted the same exercise for a shorter period of time and found out there was not over 600, but approximately 600. She then went and said, I also reviewed company payroll records for the over 600 identified individuals to determine how many of them separated their employment with the company and their dates of separation. Based on my review, there were 138 individuals. This was all known to them. And had they did that declaration that Judge Cardi found lacking, the result may have been different. But what they really want is, hey, they made a mistake. I understand attorneys make mistakes, but this is one mistake, but they're attempting to correct by claiming that somehow this class certification order comes. But it doesn't get you as far as you need to get merely by showing what they know. Because the basic underlying premise is you've got to put them on notice in the things that you find rather than what they know. Now, where it might get you there is the things that they have represented to the district judge the first time around as true, but not based on what they know. The question is what they represent as true. And that's in the, and the only other aspect. Okay. The only one thing is the 15 minutes that Mr. Taylor testified to in two years before. We want to give you time for rebuttal, so you better sit down. I think we've narrowed the question somewhat to, as Judge Fletcher just really put it. It's not the fact that you made the calculation. If you made a calculation which wasn't your obligation, let's assume that, but you did it and you didn't tell anybody, that's fine. You were an obligation, obligated to do it. Whether you did it or not, only you know. And then you went under oath. But if you do make the calculation and you represent it to the court that you've done it and you know it, can you then come back later and say, well, you know, we didn't have to make a calculation. If you tell the court we know what it is and within 30 days you then at least within 30 days after that you don't come back and say, well, we were missing affidavits. But can you come back and represent to the court, well, we knew it, we did it, but we didn't have to and we told you we did it. And now we want to start as if we hadn't said anything to you before. Let me answer that first. Good morning, Your Honors. I was coughing. Good morning. Second. For Cox here. I would answer your question in this. If you actually did set forth some basis for judicial estoppel, there's some argument that I could say something, I think, that could for some equitable basis bar me later on from saying something completely the contrary. Although, even for judicial estoppel, I'd have to be successful. If I made, and I didn't, by the way, I'm going to get to that. But if I came and said, took one position and then got remanded and then came back again and took the opposite position, you actually wouldn't have a basis for judicial estoppel because one of the essential elements of judicial estoppel is my position is adopted and successful in the first time I use it. But I think the important thing to look at here, Your Honors, is the actual facts here is what did we put in the initial declaration? We said, let's assume that this is a meal period case. And let's just assume that the complaint doesn't say anything about how often the meal period violations occurred or what was the reason for the meal period violations. None of that was there. I encourage you, look at the complaint. It says nothing but a bunch of legal conclusions. So we said, okay, let's just assume that every day someone worked, they didn't get a meal period and they didn't get a rest period. And if you add all that, by our statistical analysis, flawed as it may have been, came to $20 million. The problem with that is that entire exercise has been deemed by this Ninth Circuit as an invalid way to calculate amount in controversy. I encourage you, two years ago, right over in courtroom two, I was arguing and Judge Graber pointed out that in Ibarra v. Mannheim, which is 775 F. 3rd 1193, that you can't, that's not a reasonable assumption. Putting aside the whole issue about this is also under a legal certainty test because the plaintiff, in his paper, said the amount in controversy was less than $5 million. So there was nothing in the complaint initially that supported the kind of calculations we were doing as being a valid basis to get you to the $5 million. What happened later in the case, though, is the case completely changed. It's no longer a meal period case. The plaintiff never even sought class certification on meal periods. Instead, an entirely new theory was hatched in the case that the flaw here was nothing to do with meal periods. It has to do with a subset of the original class members can participate in a program called Home Start where they're allowed to bring their truck. These are cable installers. Let me help you get to the point that you really don't want to get to, which is to say, okay, this is now, how long does it take you to get from your last stop to home? And this plaintiff says 15 minutes. You know, I would kill for a commute time like that. Most people are going to kill for a commute time like that. But let's take that then as the commute time for the members of the class, and then you multiply it out by the numbers that you asserted at the previous time in terms of how many people we have and blah, blah, blah. You're over $5 million. Okay, let's go back to that. First of all... It's taking the numbers that you guys asserted the first time you tried to remove in terms of how many people there are, how many weeks they've worked, and so on. You multiply 15 minutes out and you get over $5 million. Is that correct? Well, that would be correct. But that's a different class. This is people, a subset. This is people on Home Start. I know it's a different class, but the question is, are you stuck with the numbers you represented to be true the first time around when those numbers, if plugged into a 15-minute commute time, yield more than $5 million? That's the question. The answer is no for two reasons. Reason number one, the statistics were about all cable installers. The theory of driving a truck home is about a subset, a relatively smaller subset, of people who were enrolled in the Home Start program. So they're not even the same groups of people. But second, the other flyer is it's Cuxhausen. This is the Cuxhausen case precisely. There, there was allegations that the flaw, the error by the company was some kind of misrepresentation or not following some kind of regulation that allowed the plaintiff to recover his damages, the value of a BMW that he had purchased. And he said in the complaint there were at least 200 people who were similarly situated. And they knew that his BMW was worth $51,000. But the court said- I get that because there's some possibility of very wide variation of the price of those BMWs. Well, there is, I think, some possibility of fairly wide variation of the time it takes you from the end of your shift to get home. But almost all of it's going to be above 15 minutes. That's very commonsensical, and you're probably right. But that's certainly not any piece of paper. That's not in the record. And actually, I don't know that. I mean, I don't know where people, unless these people work in their territories. But you have to be fanciful to imagine that 15 minutes is sort of unrepresentative as the average number. I mean, that's impossible. Let's assume you're right. Let's assume that 15 minutes is on the low side and the actual average was 30. We used, by the way, 15 minutes as an assumption to get to the $7 million. So we didn't assume it was any higher than that when we finally decided to go and do an analysis. But still, you're back to your original point. That's requiring us to go and do calculations and assumptions and look at things. In the BMW case, it is obvious. I think it is far more obvious that the average cost of a BMW vehicle is going to be more than $25,000. The problem is the one that Judge Reiner puts his finger on, and that is you're not required to do the calculation. You're not required to present to the court. But you did. No, we didn't, Your Honor. I mean, we did a calculation for a meal period case that was not even a calculation that if the court had accepted it, if he said, you know what, you have proven beyond a shadow of a doubt that this is the number of shifts and this is the average amount of pay, we still would have been remanded under Ninth Circuit precedent on the basis that that's not a proper estimate of damages in a meal period case. When we eventually removed years later, we did a completely different analysis that I did it myself, and I did it after class certification when we knew the case was now limited to solely this issue of the home start. We said, let's see what this case is worth, and let's see if we have basis to remove now. I mean, that's what we did. And we did the analysis. We went and looked up the amount of percentage of people who were on home start. We had to plug in a number for the average commute, because we didn't have that. We don't track that. So we took the 15 minutes, and we came up with $9 million, and we removed. That is entirely consistent with what we're allowed to do, and it did not involve in any way, shape, or form recanting a previous declaration, taking a contrary position than we had taken before. And in your initial point, you're right. Half the cases are all about forum shopping on both sides. I mean, Judge Graber pointed that out to me, too, and I agree. The difference is you can hate us all you want, but Congress passed this law for a reason. Congress, it was in the height of the Republican administration when there was an all-Republican Congress in 2004. They were concerned supposedly about judicial hell holes in Illinois, and they set up certain procedures of what you have to follow to be able to remove. We have followed those procedures. As Your Honor, in Roth, and you're the author of Roth, in 1446B sets forth specific criteria. We have followed all those criteria. And there was no questions before, but I want to address this in case it's on your minds, about successive removals. We have a basis for successive removal. There was, at a minimum, at a very, very minimum, there's been a change in law as to the legal certainty case. So I think it's just the whole case comes down to 1446B-3, and I think the answer is by Roth provides the answer to that. And to the extent, this point about we can assume that because he testified that his commute was 15 minutes, that we have to then plug that into the formula, that is foreclosed by Cuxhausen. So we're both binding Ninth Circuit cases. You can hate me all you want. I don't mind. But that's what the law requires. I'd have like six minutes left. I hate to waste time. Is there any questions I can address? I really do think this is a straightforward case. Thank you. Thank you, counsel. I will be very brief. On the successive removal, standard fire, I understand changed the law. But then the question is, why didn't we remove within 30 days? And also, would it have made a difference? Because you still have the admissibility problem with the declaration, no evidence of the 4, the 10, and the 50. Now, with respect to the issue, the numbers were run. The math that you talk about, to get to this 9 million, what are they taking? They're taking the 4, 4 days a week. They're taking the 10, 10 hours a day. They're taking the 50 hours a week. All of the stuff that they put in their papers the first time around. Thank you. This case will be submitted. The court will stand in recess for the day.
judges: Reinhardt, W. Fletcher, Paez